United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD N TAWE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-76 |
| | § | |
| MARKESE K REO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CLAIMS AND RETAIN CASE

This case is a consolidated civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a Defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, it is respectfully recommended that some of plaintiff's claims be dismissed and others retained as described and service ordered on the specified Defendants.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. FACTUAL ALLEGATIONS

### Summary of Consolidated Actions

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Ellis Unit in Huntsville, Texas. Plaintiff filed this civil rights action on March 7, 2016. It was consolidated with two other civil rights cases Plaintiff filed the same day, Cause Nos. 2:16-CV-77 and 2:16-CV-83.

Plaintiff complains in Cause No. 2:16-CV-76 that on April 1, 2015, he was attacked by several gang members while he was housed in F Building, 2 Section in the McConnell Unit in Beeville, Texas. He claims that the guards in the unit that day had pre-knowledge that there would be an attack and failed to protect him. He names as Defendants the following McConnell Unit personnel: Felix C. Anazor, the roving officer on duty when he was injured, and Markese K. Reo, the picket officer on duty when he was injured, Darren S. Mayer and Sergeant Stugis, gang intelligence officers, and Captain Joshua B. Boyer. Plaintiff claims in part that the failure of the guards to act to protect him that day was in retaliation for a previous incident on March 13, 2014.

Plaintiff complains in Cause No. 2:16-CV-77 that on September 20, 2015, a fight broke out in the 8 Building dining hall, on the B side at the McConnell Unit, and Lieutenant Kinkler's failure to restrain the rowdy inmate resulted in injury to Plaintiff.

He names as Defendant Lieutenant Kimberly Kinkler, Jerome A. Wilson, and Wardens Kenneth Putnam, Jr., Matt Barber, and Corey Furr from the McConnell Unit.

Plaintiff complains in Cause No. 2:16-CV-83 that on March 13, 2014, after Plaintiff was arrested while at 8 Building, L Pod, 3 Section by Lieutenant Crystal Lopez, he was taken to 11 Building and strip searched. Natasha Chisum violated his Eighth Amendment rights by deliberately turning off the heat and forcing him to spend the night without shoes, clothing, mattress or a blanket. He named Lieutenant Chrystal Lopez as a Defendant, and was permitted to orally amend his complaint to add Defendant Natasha Chisum.[1] Lieutenant Chrystal Lopez was the ranking officer present who heard Natasha Chisum state she was going to turn off the heat. Plaintiff also named as Defendants Sergio Perez, Jonathon Chisum, Javier Muro, and Justin L. Villarreal.

## Details of Claims

An evidentiary hearing was held on March 10, 2016 and resumed on May 12, 2016. The following allegations were made in plaintiff's original complaints (D.E. 1 in each of the consolidated cases) or at the evidentiary hearings:

Plaintiff arrived at the McConnell Unit in the Fall of 2009 and remained there until he was transferred to the Ellis Unit in Huntsville in 2015. The three incidents consolidated here will be discussed in chronological order.

On March 13, 2014, Plaintiff was housed in 8 Building, L Pod, 3 section. He wanted to discuss his concerns and complaints about the living conditions with Officer Vincent who was working the pod. Vincent ordered the inmates to remove their shower

---

[1] The Clerk is directed to add Natasha Chisum to the docket as a named Defendant.

bags and clothing from their cell doors and stated he would not be discussing inmate complaints at that time.  Plaintiff initially removed his bag and clothing, but decided to place them back on the cell door to draw Vincent's attention so he could talk with him about the living conditions.[2]  Officer Vincent stopped and spoke to Plaintiff, including using threatening language.  Plaintiff used Vincent's words and asked the officer how that felt and suggested that the officer's tone and words were not appropriate or professional.  Lieutenant Lopez asked what happened between Plaintiff and Vincent, and when told of Plaintiff's words, ordered Vincent to write a disciplinary report on Plaintiff for threatening a guard.  Lopez arrested Plaintiff and removed him to 11 Building and placed him in a solitary cell.  Once in the cell, Plaintiff was ordered to remove his clothing and be strip searched.  Plaintiff complied, but was ordered a second time to squat and spread his buttocks.  Plaintiff alleges that his strip search was witnessed by a number of male and female officers.  He claims that he was taunted and threatened with bodily harm and sexual assault.  He responded verbally.

One of the guards, Jonathan Chisum, threatened Plaintiff with a metal rod and came into the cell and attempted to get Plaintiff to assault him.  Plaintiff responded only verbally.

Another guard, Natasha Chisum, advised Plaintiff that she was going to turn the heat off for the entire area and leave him in the cell to freeze.  Lieutenant Lopez was

---

[2] Plaintiff wanted to complain about the temperature, the smell and the lack of hot meals in the unit. Those complaints are not part of his claims in this consolidated action.

present and heard Natasha Chisum's statement and took no action to prevent Defendant Chisum's from following through and actually turning off the heat.

Sergeant Javier Muro, and Sergeant Justin Villarreal were also present. Plaintiff remained in the cell without shoes, socks, clothing, a mattress or a blanket overnight. In the middle of the night, his boxer shorts were returned to him. Plaintiff testified that he passed out during the night and in the morning he was very cold and had muscle cramps once he started warming up.

Plaintiff received a disciplinary write up for his threat to Officer Vincent and was punished by 45 days loss of commissary, 45 days restricted to his cell and loss of good time.

On April 1, 2015, Plaintiff overheard offender Otero or Arturo tell Felix Anazor, the rover, that there was going to be a fight. Anazor told Otero that he was told by the warden not to interfere. A little later, Otero again told Anazor there was going to be a fight or beat-down and Anazor responded that he was not going to be part of it. Anazor stopped passing out mail and went upstairs.

Plaintiff finished exercising and planned to shower. When he got to the showers, offender Nickerson's things were hanging on the door, but Nickerson was not in the shower. Plaintiff moved Nickerson's things and was going to shower when Nickerson appeared and began to verbally harass and threaten Plaintiff. Plaintiff explained that he did not want to fight and spoke in a loud voice so he could be heard by officers in the unit. Nickerson was in the Bloods gang; Plaintiff testified he is not affiliated. At some

point, the two men engaged. Plaintiff punched Nickerson twice and knocked Nickerson out. After a while, Nickerson got up and walked away.

 Nickerson's cell mate and two or three others were near the showers. They were all gang members; one was a Blood, another was a Tango Blast, and the third was a Crip. Plaintiff knew their affiliations from the way they spoke and from their tattoos. Plaintiff talked to them loudly to try to draw the officers' attention. Anazor was in 3 section and could not see Plaintiff who was in 2 Section, but Plaintiff believed he could hear what was happening. Reo was the picket officer and he had a view of the whole area. After talking with the three men, Plaintiff turned his back and walked away towards the showers when one of the men punched him in the back and the others joined in. The fight lasted three to five minutes. Plaintiff was bruised on his face and body, he had a facial fracture, and his left eye was injured, but he recovered from his injuries within a few weeks. Plaintiff received medical attention that day. He was taken to the local hospital and x-rayed. The following day he was sent to John Sealy Hospital and was examined by a specialist.

 Three days after the fight, Plaintiff was visited by Sergeants Darren Mayer and Sturgis, both with gang intelligence at the McConnell Unit. Plaintiff was arrested, but not convicted of a disciplinary violation for fighting. He seeks monetary damages for his injuries arising from Anazor's and Reo's failure to protect him.

 On September 20, 2015, there was an altercation in the 8 Building Dining Hall, B side. Offender Jeffrey Jackson threw food at Offender Moreno. Some of the food spattered Plaintiff's uniform. Several officers rushed in to secure the scene and one

began to place restraints on Jackson, but Lieutenant Kinkler stopped the restraint and asked Jackson to walk back to his pod. Plaintiff expressed his displeasure at being spattered to Jackson. Jackson poured a pitcher of water and a second pitcher of punch on Plaintiff, and then struck Plaintiff with an empty pitcher that lacerated Plaintiff's face. Plaintiff was taken to medical and ultimately received 13 stitches to close the laceration.

Plaintiff was escorted to medical by Lieutenant Jerome Wilson. On the way to medical, Lieutenant Wilson placed Plaintiff in a dirty shower room, strip searched him, and left him there with open wounds.

Plaintiff claims that Lieutenant Kinkler was deliberately indifferent to his safety when she failed to restrain offender Jackson after the initial altercation and he seeks money damages for his injuries. Plaintiff claims that Lieutenant Jerome Wilson retaliated against him by placing him in a shower facility naked and with open wounds.

Plaintiff was transferred after this event. He filed a grievance claiming that Assistant Warden Kenneth Putnam, Jr. and Assistant Warden Corey Furr acted with a retaliatory motive.

### III. DISCUSSION

#### A. Legal Standard

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id*.

### B. Failure to Protect

To establish a failure to protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions that pose a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 at 847; *Cantu*, 293 F.3d at 844. Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. *Id*. at 837.

If a plaintiff presents evidence showing that a substantial risk of attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the circumstances suggest that the Defendant-official being sued had been exposed to the information concerning the risk and thus must have known about it, then

such evidence could be sufficient to permit a trier of fact to find that the Defendant-official had actual knowledge of the risk. *Farmer*, 511 U.S. at 842-43.   In *Adames v. Perez*, 331 F.3d 508 (5th Cir. 2003), the Fifth Circuit vacated and remanded a jury verdict in favor of an inmate, holding that evidence of isolated, previous attacks was insufficient to show deliberate indifference to an inmate's safety health.

Plaintiff's complaint regarding the April 2015 attack on him by gang members alleges that the rover Anazor was twice advised that there was going to be a fight, that Anazor left the area, and did not respond to Plaintiff's loud voice when speaking to the three gang members who assaulted him after he explained that he did not want to fight them.  He further claims that the picket officer Reo saw the fight and was able to observe the entire sequence of events beginning with the assault by Nickerson and ending with the assault on him by three others, but did nothing to protect Plaintiff.  Plaintiff claims to have suffered injuries and has required medical attention.  Plaintiff has alleged facts sufficient to state a claim for failure to protect against Defendants Anazor and Reo.

As to Plaintiff's claim that on September 20, 2015, Lieutenant Kinkler failed to protect him by not shackling Jackson who had already caused a disturbance in the dining hall by throwing food at another inmate, the issue is closer.  Ultimately, Jackson was sufficiently aggressive that he not only poured two pitchers of liquids on Plaintiff but also struck him with a pitcher.  Plaintiff needed medical treatment.  Plaintiff has alleged facts sufficient to state a claim for failure to protect against Defendant Kinkler.

C. **Cruel and Unusual Punishment**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const.

amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A constitutional violation occurs only when two requirements are met, 1) the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need" and 2) the responsible prison official was "'deliberately indifferent' to inmate health or safety." *Woods*, 51 F.3d at 581. A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994). "To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occurred." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Helling v. McKinney*, 509 U.S. 25, 33, (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.")). They need only show that there is a

"substantial risk of serious harm." *Id*.

In *Palmer v. Johnson*, 193 F.3d 346, (5th Cir. 1999), the Fifth Circuit affirmed the denial of summary judgment where a prisoner complained of outdoor cold conditions and lack of bathroom facilities for 17 hours holding that there was a fact issue raised as to whether prison officials violated the Eighth Amendment. In *McCray v. Burrell*, 516 F.2d 357, 369 (4th Cir. 1975) (cited with approval in *Palmer*), the court held that placing a naked prisoner in an unheated observation cell for 46 hours without blanket or mattress, no sink with the toilet a hole in the floor was a per se violation of the Eighth Amendment.

Plaintiff claims that Officer Natasha Chisum intentionally turned off the heat in the area to punish him and the ranking officer, Lieutenant Crystal Lopez failed to stop the action. They then left Plaintiff overnight in a solitary cell with no clothing, no mattress and no blanket. He claims he passed out while in the cell and had muscle cramps when he began to warm up the next morning. Plaintiff has alleged facts sufficient to state a claim for an Eighth Amendment violation against Defendants Lopez and Chisum for his cold confinement in March 2014.

### D. Claims Against Other Defendants

#### 1. Sergio Perez, Javier Muro, Justin Villarreal, and Jonathan Chisum

Plaintiff's complaints alleged claims against prison personnel other than those recommended to be served. Plaintiff argues that Captain Sergio Perez, Sergeant Javier Muro, and Sergeant Justin Villarreal allowed him to be placed in cold confinement in March 2014 and that Muro, Villarreal, and Jonathan Chisum threatened him with bodily harm and sexual assault. "[M]ere harassment or verbal abuse alone does not state a

constitutional violation." *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993); *David v. Hill*, 401 F. Supp.2d 749, 757 (S.D. Tex. 2005).

Plaintiff admits that Captain Perez was not present when Plaintiff was left alone in a cold cell overnight and likely did not know about the event until later. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Because Captain Perez is not alleged to have done either, it is respectfully recommended that the claim against him be dismissed for failure to state a claim upon which relief can be granted. It is further recommended that the claim against Jonathan Chisum for the verbal threat of sexual assault be dismissed for failure to state a claim.

A prison official may be liable for failing to protect an inmate from another prison guard if he knew of an excessive risk to inmate health or safety posed by the other prison guard and disregarded that risk. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("[A police] officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983 [for the excessive use of force by another officer under the theory of bystander liability."). However, Plaintiff does not claim that Natasha Chisum used excessive force and he has not pleaded or shown that Sergeants Muro, Villarreal and Jonathan Chisum knew that Natasha Chisum intended to shut off the heat or that they had the power to do anything about it, given that Lieutenant Lopez had already tacitly allowed the conduct to occur when she heard and allowed the heat to be shut off to

Plaintiff's cell. It is respectfully recommended that all claims against Sergeants Muro, Villarreal, and Jonathan Chisum for being present when Natasha Chisum stated she would turn off the heat to Plaintiff's cell be dismissed for failure to state a claim upon which relief can be granted.

### 2. Darren Mayer and Sgt. Stugis

Plaintiff testified that he believed that Gang Intelligence Officers Darren Mayer and Sergeant Stugis took their time investigating the gang fight that injured him in April 2015 in retaliation for the events the previous year when he was placed in cold confinement overnight. But Plaintiff does not explain any connection between the events in 2014 and those in April 2015.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the Defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "[A]n inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive [the allegedly retaliatory event] would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id*. Because Plaintiff has not alleged facts from which retaliation may be reasonably inferred, it is recommended that all claims against Defendants Mayer and Sturgis be dismissed for failure to state a claim.

### 3. Joshua Boyer

Plaintiff sued Captain Joshua Boyer who presided over the disciplinary hearing following the gang fight in April 2015.  Plaintiff stated during the evidentiary hearing that the disciplinary offense was dismissed, and admitted that he did not believe Captain Boyer had violated his constitutional rights.  It is recommended that all claims against Captain Joshua Boyer be deemed withdrawn based on Plaintiff's statement during the evidentiary hearing.

### 4. Jerome Wilson

Plaintiff also argues that in the September 2015 dining hall incident in which Offender Jackson struck him with a pitcher, Lieutenant Jerome Wilson retaliated against Plaintiff when Wilson placed Plaintiff naked in the dirty shower room before taking him to the infirmary for stitches.  Plaintiff does not state any factual foundation for his claim of retaliation as previously discussed, and Plaintiff suffered no harm because of Defendant Wilson's actions.  Accordingly, it is recommended that Plaintiff claims against Defendant Wilson be dismissed for failure to state a claim.

### 5. Wardens Putnam, Barber, and Furr

Toward the end of Plaintiff's evidentiary hearing on May 12, 2016, Plaintiff stated that Wardens Barber, Putnam, and Furr did not violate his Constitutional Rights.  All claims against these Defendants are deemed withdrawn and it is respectfully recommended that all claims against these Defendants be dismissed without prejudice.

## IV. **RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that plaintiff's claims against Defendants Felix C. Anazor, Markese K. Reo, Natsha Chisum, Chrystal Lopez, and Kimberly K. Kinkler be retained and service be ordered on these Defendants. It is further recommended that Plaintiff's claims against Defendants Sergio Perez, Javier Muro, Justin Villarreal, Jonathan Chisum, Darren Mayer, Sergeant Sturgis, and Jerome Wilson be dismissed with prejudice for failure to state a claim, and that Plaintiff's claims against Defendants Joshua Boyer, William Putnam, Matt Barber, and Corey Furr be deemed withdrawn and dismissed without prejudice.

Respectfully submitted this 2nd day of September, 2016.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).