United States District Court
Southern District of Texas
**ENTERED**
September 14, 2017
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICHARD N. TAWE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-76 |
| | § | |
| MARKESE K REO, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT

This case is a consolidated civil rights action filed by Plaintiff Richard N. Tawe pursuant to 42 U.S.C. § 1983.  Pending before the Court is a Motion for Summary Judgment filed by Defendants Markese K. Reo, Felix C. Anazor, Natasha Chisum, Crystal Lopez, and Kimberly K. Kinkler.  (D.E. 42).

For the reasons stated herein, it is respectfully recommended that Defendants' motion for summary judgment be granted in part and denied in part.  It is respectfully recommended that Defendants' summary judgment motion be granted and Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.  It is respectfully recommended further that Defendants' summary judgment motion be granted and the following claims be dismissed with prejudice for failure to exhaust administrative remedies: (1) Plaintiff's conditions of confinement claims against Defendants Lopez and Chisum in their individual capacities; and (2) Plaintiff's failure to protect claim against Defendant

Kinkler in her individual capacity.   Lastly, it is respectfully recommended that Defendants' summary judgment motion be denied with respect to Plaintiff's failure to protect claims against Defendants Anazor and Reo in their individual capacities.

## I.    JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

## II.    PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID") and is currently incarcerated at the Ellis Unit in Huntsville, Texas. Plaintiff filed this civil rights action on March 7, 2016. It was consolidated with two other civil rights cases Plaintiff filed the same day, Cause Nos. 2:16-CV-77 and 2:16-CV-83.   Plaintiff's allegations in this consolidated civil rights action arise in connection with his confinement at the McConnell Unit in Beeville. Texas.

Plaintiff complained in Cause No. 2:16-CV-76 that, on April 1, 2015, he was attacked by three gang members while he was housed in F Building, 2 Section in the McConnell Unit in Beeville, Texas.   He alleged that the guards in the unit that day had pre-knowledge that there would be an attack and failed to protect him. He named as Defendants the following McConnell Unit officials: (1) Officer Anazor, the roving officer on duty when he was injured; and (2) Officer Reo, the picket officer[1] on duty when he was injured; (3) Darren S. Mayer, gang intelligence officer; (4) Sergeant Stugis, gang

---

[1] The "picket officer" is a prison guard generally positioned inside the unit's control room and is charged with operating the doors inside the unit.  *See Herrin v. Treon*, 459 F. Supp. 2d 525, 531 n.2 (N.D.  Tex. Oct. 10, 2006)

intelligence officer; and (5) Captain Joshua B. Boyer.  Plaintiff additionally claimed that the failure of the guards to act to protect him that day was in retaliation for a previous incident occurring on March 13, 2014.

Plaintiff complained in Cause No. 2:16-CV-77 that on September 20, 2015, a fight broke out in the 8 Building dining hall, on the B side at the McConnell Unit, and that Lieutenant Kinkler's failure to restrain the rowdy inmate resulted in injury to Plaintiff. He named as Defendants the following McConnell Unit officials: (1) Lieutenant Kinkler; (2) Jerome A. Wilson; (3) Assistant Warden Kenneth Putnam, Jr.; (4) Warden Matt Barber; and (5) Assistant Warden Corey Furr.

Plaintiff complained in Cause No. 2:16-CV-83 that, sometime in March, 2014, after Plaintiff was arrested while at 8 Building, L Pod, 3 Section by Lieutenant Crystal Lopez, he was taken to 11 Building and strip searched.  (2:16-CV-83, D.E. 1, p. 4). Plaintiff asserted that Natasha Chisum violated his Eighth Amendment rights by deliberately turning off the heat and forcing him to spend the night without shoes, clothing, mattress or a blanket.  Plaintiff further alleged that Lieutenant Lopez was the ranking officer present who heard Natasha Chisum state she was going to turn off the heat.   In addition to Lieutenant Lopez and Natasha Chisum, Plaintiff named as Defendants Sergio Perez, Jonathon Chisum, Javier Muro, and Justin L. Villarreal.

Plaintiff did not indicate whether he seeks to sue any of the Defendants named in the consolidated action in both their individual and official capacities.   He seeks monetary relief in the consolidated action.

On March 10 and May 12, 2016, a *Spears*[2] hearing was conducted.  On September 2, 2016, the undersigned issued a Memorandum and Recommendation (September 2, 2016 M&R), recommending that the Court: (1) retain Plaintiff's Eighth Amendment failure to protect claims against Defendants Anazor, Reo, and Kinkler; (2) retain Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Lopez and Natasha Chisum; (3) dismiss with prejudice Plaintiff's claims against Defendants Perez, Muro, Villareal, Jonathan Chisum, Mayer, Sturgis, and Wilson for failure to state a claim; and (4) dismiss without prejudice Plaintiff's claims against Defendants Boyer, Putnam, Barber, and Furr as withdrawn.  (D.E. 21).  Plaintiff filed objections on September 16, 2016 (D.E. 25), and the September 2, 2016 M&R remains pending before the District Judge.

The undersigned ordered service on Defendants Anazor, Reo, Natasha Chisum, Lopez, and Kinkler (hereinafter referred to collectively as "Defendants"), who then filed their answer to Plaintiff's complaint on October 17, 2016.  (D.E. 22, 32).  On March 17, 2017, Defendants filed the instant motion for summary judgment.  (D.E. 42).  Thereafter, Plaintiff filed his response to the summary judgment motion.  (D.E. 45).

## III.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Appx. Tab 1:      Relevant Portions of Plaintiff's Grievance records
(D.E. 42-1, pp. 1-19).

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Appx. Tab 2:     Relevant Portions of Plaintiff's Offender Protection Investigations (D.E. 42-1, pp. 20-46).

Appx. Tab 3:     Relevant Portions of Administrative Incident Review reports for April 10, 2015 and September 20, 2015 (D.E. 42-1, pp. 47-60).

Appx. Tab 4:     Relevant Portions of Offender Orientation Handbook (D.E. 42-1, pp. 61-64).

Plaintiff has not attached any summary judgment evidence to his response. Plaintiff's verified complaint and testimony at the *Spears* hearing, however, serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Accordingly, the competent summary judgment evidence establishes the following:

### A.     Plaintiff's Verified Complaint and *Spears* Hearing Testimony

Plaintiff arrived at the McConnell Unit in the fall of 2009 and remained there until he was transferred to the Ellis Unit in Huntsville in 2015. In March, 2014, Plaintiff was housed in 8 Building, L Pod, 3 section. Plaintiff wanted to discuss his concerns and complaints about the living conditions with Officer Vincent who was working the pod. Plaintiff and Officer Vincent, however, engaged in a verbal alteration. Lieutenant Lopez ordered Officer Vincent to write a disciplinary report on Plaintiff for threatening a guard.

Lieutenant Lopez arrested Plaintiff and removed him to 11 Building and placed him in a solitary cell. Once in the cell, Plaintiff was ordered to remove his clothing and be strip searched. Another guard, Natasha Chisum, advised Plaintiff that she was going to turn the heat off for the entire area and leave him in the cell to freeze. Lieutenant Lopez was present and heard Natasha Chisum's statement and took no action to prevent

Defendant Chisum's from following through and actually turning off the heat. After being naked in the cell for five hours, Plaintiff was given his boxer shorts around midnight. Plaintiff testified that he passed out during the night while on the floor and in the morning he was very cold and had muscle cramps once he started warming up. Plaintiff received a disciplinary write up for his threat to Officer Vincent and was punished by 45 days loss of commissary, 45 days restricted to his cell and loss of good time.

On April 1, 2015, Plaintiff overheard offender Otero tell Officer Anazor, the rover officer, that there was going to be a fight. Officer Anazor told Otero that he was informed by the warden not to interfere. Later that day, Otero again told Officer Anazor there was going to be a fight or beat-down, and Anazor responded that he was not going to be part of it. Officer Anazor stopped passing out mail and went upstairs. Plaintiff testified that Officer Reo, the picket officer, was also aware that a fight was going to take place.

Plaintiff finished exercising and planned to shower. When he arrived at the showers, offender Nickerson's things were hanging on the door even though Nickerson was not in the shower. Plaintiff moved Nickerson's things and was going to shower when Nickerson appeared and began to verbally harass and threaten Plaintiff. Plaintiff explained that he did not want to fight and spoke in a loud voice so he could be heard by officers in the unit. Nickerson was in the Bloods gang; Plaintiff testified he is not affiliated. At some point, the two men engaged. Plaintiff punched Nickerson twice and knocked Nickerson out. After a while, Nickerson got up and walked away.

Nickerson's cell mate and two or three others were near the showers.  They were all gang members; one was a Blood, another was a Tango Blast, and the third was a Crip.  Plaintiff knew their affiliations from the way they spoke and from their tattoos.  Plaintiff talked to them loudly to try to draw the officers' attention.  Officer Anazor was in the 3 section and could not see Plaintiff who was in 2 Section.  Plaintiff believed Officer Anazor could hear what was happening.  Officer Reo had a view of the whole area.  After talking with the three men, Plaintiff turned his back and walked away towards the showers when one of the men punched him in the back and the others joined in.  The fight lasted three to five minutes. Plaintiff suffered bruises to his face and body, a facial fracture, and an injured left eye.  Plaintiff received medical attention that day. He was taken to the local hospital and x-rayed.  The following day he was sent to John Sealy Hospital and was examined by a specialist.  He recovered from his injuries within a few weeks.

On September 20, 2015, there was an altercation in the 8 Building Dining Hall, B side.  Offender Jeffrey Jackson threw food at Offender Moreno.  Some of the food spattered Plaintiff's uniform.  Several officers rushed in to secure the scene and one began to place restraints on Jackson.  Lieutenant Kinkler stopped the restraint and asked Jackson to walk back to his pod.  Plaintiff expressed his displeasure to Jackson at being spattered.  Jackson poured a pitcher of water and a second pitcher of punch on Plaintiff.  Jackson then struck Plaintiff with an empty pitcher that lacerated Plaintiff's face.  Plaintiff was taken to medical and ultimately received 13 stitches to close the laceration.

### B.   Defendants' Evidence

#### (1)  The Incident Occurring in March, 2014

On April 6, 2014, Plaintiff submitted a Step 1 grievance (Grievance No. 2014122773), complaining about being "arrested by Sergeant Lopez" on March 13, 2014, following his "verbal misunderstanding" with Officer Vincent.   (D.E. 42-1, p. 9). Plaintiff further complained about being strip-searched and left in a cold cell without clothes from 8:00 p.m. to either 11:00 p.m. or midnight.  (D.E. 42-1, p. 10).  Plaintiff indicated on the Step 1 Grievance that he also complained to "Sgt. Chinum and Sgt. Zambrano" on March 23, 2014, who responded that they would give Plaintiff his clothes back at a time of their choosing.  (D.E. 42-1, p. 9).  Plaintiff's Step 1 grievance was returned with no response because the "[g]rievable time period ha[d] expired."  (D.E. 42-1, p. 10).

On April 10, 2014, Plaintiff submitted a second Step 1 grievance (Grievance No. 2014124269), complaining again about being "arrested by Sergeant Lopez" on March 13, 2014.  (D.E. 42-1, p. 7).  Plaintiff re-stated his allegations about being strip-searched and left in a cold cell without any clothes from 8:00 p.m. to either 11:00 p.m. or midnight. (D.E. 42-1, p. 8).  Plaintiff further repeated that he complained to "Sgt. Chinum and Sgt. Zambrano" on March 23, 2014, who responded that they would give Plaintiff his clothes back at a time of their choosing.  (D.E. 42-1, p. 9).  Plaintiff then affirmed his "clothes were returned four to five hours later."  (D.E. 42-1, p. 9).  This Step 1 grievance was returned with no response because the "[g]rievable time period ha[d] expired."  (D.E. 42-1, p. 10).

### (2)   The April 1, 2015 Incident

On April 1, 2015, Plaintiff was attacked by several gang members.  (D.E. 42-1, p. 55).  Plaintiff was examined by the medical department at the McConnell Unit and then transferred to the hospital for treatment to an orbital fracture to the left side of his face. (D.E. 42-1, p. 55).  On April 3, 2015, the McConnell Unit Classification Committee (UCC) initiated an Offender Protection Investigation (OPI).  (D.E. 42-1, pp. 22-27). Lieutenant Steven Rey Ambriz interviewed Plaintiff the next day.  (D.E. 42-1, p. 25). Plaintiff stated to Lieutenant Ambriz that he neither had claimed his life to be in danger nor had wanted to file an OPI.  (D.E. 42-1, p. 25).  The UCC recommended no action be taken.  (D.E. 42-1, p. 26).

On April 6, 2015, Plaintiff submitted a Step 1 grievance (Grievance No. 2015120737), complaining that the roving and picket officers on duty failed to protect him from the April 1, 2015 assault.  (D.E. 42-1, pp. 19-20).  In the response to the Step 1 grievance, the reviewing officer stated that: (1) an OPI was initiated on April 3, 2015, (2) Plaintiff had stated his life was not in danger; and (3) no evidence could be found that that the staff had been notified of the assault before April 3, 2015.  (D.E. 42-1, p. 20).

On April 13, 2015, a second OPI was initiated in connection with the April 1, 2015 assault.  (D.E. 42-1, pp. 28-32).  Plaintiff admitted during his interview to being physically assaulted by several inmates on April 1, 2015.  (D.E. 42-1, p. 31).  Plaintiff then expressed concern over the fact the offenders were members of different Security Threat Groups (STG).  (D.E. 42-1, p. 31).  Plaintiff further indicated that he was not in any danger.  (D.E. 42-1, p. 31).  The second OPI confirmed that one of the offenders was

a member of a STG while the other two offenders were not.  (D.E. 42-1, p. 31).  The UCC ultimately substantiated Plaintiff's assault claims and recommended a housing change.  (D.E. 42-1, p. 32).  On April 27, 2015, the Region IV Director's Office completed the Administrative Review of this matter.  (D.E. 42-1, p. 57).  The report noted that the staff utilized good review practices to identify conflict and created a safe and secure prison environment by identifying and isolating a victim of assault.  (D.E. 42-1, p 57).

On April 30, 2015, Plaintiff submitted his Step 2 grievance, claiming his life was in danger at the moment of the April 1, 2015 incident.  (D.E. 42-1, p. 17).  Plaintiff further states that, if the officers had been attentive, the altercation occurring on April 1, 2015 would have been diffused.  (D.E. 42-1, p. 17).  In response to the Step 2 grievance, the reviewing officer stated that the OPI decision to house Plaintiff away from the other offenders was sufficient and that no further action was warranted.  (D.E. 42-1, p. 18).

### (3)  The September 20, 2015 Incident

On September 22, 2015, Lieutenant Kinkler initiated an OPI on behalf of Plaintiff due to Plaintiff being assaulted in the chow hall two days earlier.  (D.E. 42-1, p. 35).  Plaintiff stated in connection with the OPI, however, that his life was not in danger.  (D.E. 42-1, p. 35).  Because Plaintiff's assault was substantiated, the UCC recommended Plaintiff for a unit transfer.  (D.E. 42-1, p. 38).

On September 28, 2015, Plaintiff submitted a Step 1 grievance (Grievance No. 2016016753), complaining that Lieutenant Kinkler had failed to protect Plaintiff from being assaulted by not restraining Jackson when escorting Jackson out of the chow hall.

(D.E. 42-1, p. 15). Plaintiff acknowledged that the altercation began when Jackson dumped food on another inmate causing particles of food to fall on Plaintiff's uniform and tray. (D.E. 42-1, p. 15). In the response to the Step 1 grievance, the reviewing officer stated that Plaintiff had been recommended by the UCC for transfer to another unit and that no further action was warranted. (D.E. 42-1, p. 16).

On October 1, 2015, Plaintiff submitted a Step 1 grievance (Grievance No. 2016018343), complaining that the State Classification Committee's decision to transfer him based on the September 20, 2015 OPI violated his due process rights because he was not present at the hearing. (D.E. 42-1, pp. 5-6). Plaintiff included no claim in this grievance regarding Lieutenant Kinkler. The grievance was returned to Plaintiff unprocessed because it was deemed a "[s]ubmission in excess of 1 every 7 days." (D.E. 42-1, p. 6).

On October 2, 2015, Plaintiff submitted a Step 1 grievance (Grievance No. 2016018944), reasserting his due process claim because he was not present at the UCC hearing. (D.E. 42-1, pp. 3-4). Plaintiff again included no claim in this grievance regarding Lieutenant Kinkler. The grievance was returned to Plaintiff unprocessed because it was deemed a "[s]ubmission in excess of 1 every 7 days." (D.E. 42-1, p. 4).

On October 6, 2015, Plaintiff submitted a Step 1 grievance (Grievance No. 2016021933), reasserting his due process claim because he was not present at the UCC hearing. (D.E. 42-1, pp. 11-12). While complaining against religious beard restrictions, Plaintiff included no claim in this grievance regarding Lieutenant Kinkler. (D.E. 42-1, p. 12). In response to the Step 2 grievance, the reviewing officer initially stated that "[o]nly

one issue will be addressed per grievance.  (D.E. 42-1, p. 12).  The reviewing officer concluded that no action was warranted after noting: (1) the UCC's recommendation for a unit transfer; (2) the State Classification Committee's decision concurring with the recommendation to transfer; and (3) Plaintiff's transfer to the Ellis Unit, effective on October 16, 2015.  (D.E. 42-1, p. 12).

On October 12, 2015, Plaintiff submitted his Step 2 grievance, appealing from Step 1 Grievance No. 2016016753.  (D.E. 42-1, pp. 13-14).  Plaintiff argued that the UCC's decision to transfer him violated his due process rights because he was not present at the UCC meeting.  (D.E. 42-1, p. 13).  Plaintiff expressed concerns regarding his mental health treatment as a result of the transfer.  (D.E. 42-1, pp. 13-14.)  Plaintiff did not include any complaints related to Lieutenant Kinkler's conduct.  In response to the Step 2 grievance, the reviewing officer stated that "[a]n investigation has been conducted into your claims of staff misconduct" and that "[t]he information provided in your Step 2 appeal does not refute the finding of the Step 1 investigation." (D.E. 42-1, p. 14).

On October 15, 2015, the Region IV Director's Office completed the Administrative Incident Review of the September 20, 2015 altercation between Plaintiff and offender Jackson.  (D.E. 42-1, pp. 49-51).  The report summarized that: (1) on September 20, 2015, Plaintiff was assaulted by offender Jackson in the 8 Building dining hall when Jackson picked up a water pitcher and struck Plaintiff on the head; (2) Jackson continued to strike Plaintiff after being ordered to stop; (3) Lieutenant Kinkler administered a chemical agent in the direction of both offenders who were then escorted

to medical; and (4) Plaintiff sustained two lacerations to his head and was transported to the hospital.  (D.E. 42-1, p. 49).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).   Unauthenticated and unverified

documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

## V.    DISCUSSION

### A.    Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing any Defendant in his or her official capacity for money damages, Defendants argue that those claims are barred by the Eleventh Amendment.  (D.E. 42, p. 23).  The undersigned agrees.  Accordingly, it is respectfully recommended that Defendants' summary judgment motion be granted and Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

### B.        Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances.  *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).  Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident.  *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).  The inmate should then receive a response from the unit official, and if unsatisfied with

the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.* The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 517 (citations omitted). A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.*

### (1)   *The Incident Occurring in March, 2014*

In their summary judgment motion, Defendants seek dismissal of Plaintiff's conditions of confinement claims against Defendants Lopez and Chisum for failure to exhaust his administrative remedies. (D.E. 42, pp. 15-16). Defendants contend that Plaintiff filed two Step 1 grievances (Grievance Nos. 2014122773 and 2014124269) with regard to the incident occurring on March 13, 2014 and that both grievances were filed after the grievable time had expired. (D.E. 42, pp. 15-16).

Plaintiff responds that the incident where he was strip searched and then left in a cold cell overnight without clothes or a blanket occurred on March 23, 2014, and not March 13, 2014.   (D.E. 45, p. 3).    Thus, according to Plaintiff, Grievance No. 2014122773 should not have been rejected as untimely as it was filed on April 6, 2014, within fifteen days of the complained-of incident.  (D.E. 45, p. 3).  Plaintiff contends that this rejection as untimely effectively denied him access to the court.  (D.E. 45, p. 3).

Claims must be pursued through both Step 1 and Step 2 to be considered exhausted, and the Fifth Circuit takes "a strict approach to the exhaustion requirement. *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (citing *Woodford*, 548 U.S. at 92-93); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), (per curiam), *overruled by implication on other grounds by Jones*, 549 U.S. at 216.   Exhaustion is not required in some circumstances when a remedy is not "available."   *Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir. 2010).   The Fifth Circuit holds that a remedy is not "available" when a prisoner's physical injury has prevented him from filing a timely grievance, and the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance.  *Days*, 322 F.3d at 867-68.  On the other hand, an administrative remedy is not "unavailable simply because a prisoner has not timely or properly filed a grievance and is consequently later barred from seeking further administrative relief."  *Dillon*, 596 F.3d at 267 n.1.

In his original complaint filed in Cause No. 2:16-CV-83, Plaintiff stated that the events comprising his conditions-of-confinement claims against Defendants Lopez and Chisum occurred on March 23, 2014.  (2:16-CV-83, D.E. 1, p. 4).  Plaintiff's grievances

related to these defendants (Grievances Nos. 2014122773 and 2014124269), however, appear to complain of events occurring on both March 13 and 23, 2014. In these Step 1 grievances, Plaintiff stated that he was "arrested by" Defendant Lopez on March 13, 2014, and that he was at some point strip-searched and left in a cold cell without clothes from 8:00 p.m. to either 11:00 p.m. or midnight. (D.E. 42-1, pp. 7-10). In both Step 1 grievances, Plaintiff complained to "Sgt. Chinum and Sgt. Zambrano" on March 23, 2014, who responded that they would give Plaintiff his clothes back only upon choosing to do so. (D.E. 42-1, pp. 7, 9). A fair reading of these grievances suggests that Plaintiff was placed in the cold cell on March 23, 2014.

Grievances Nos. 2014122773 and 2014124269 were each returned to Plaintiff with no response because the "[g]rievable time period ha[d] expired." (D.E. 42-1, pp. 8, 10). To the extent these grievances complained of events occurring on March 13, 2014, they were not submitted in a timely manner and were properly returned to Plaintiff. Even assuming Grievance No. 2014122773, filed on April 6, 2014, was timely filed as to his placement in the cold cell on March 23, 2014, it is uncontroverted that Plaintiff has not successfully completed the two-step TDCJ administrative process for exhausting his claims against Defendants Lopez and Chisum. *See Woodford*, 548 U.S. at 83.

Plaintiff presents no competent summary judgment evidence to show that: (1) he filed a Step 2 grievance with respect to his claims against Defendants Lopez and Chisum; or (2) otherwise sought to grieve the issue that his Step 1 grievance was improperly denied as untimely as to the events occurring on March 23, 2014. Plaintiff offers nothing to show that he was physically unable to pursue his available remedies or that prison

officials prevented him from challenging the denial of his Step 1 grievances as untimely. Accordingly, Defendants Lopez and Chisum should be entitled to summary judgment in their favor and dismissal of Plaintiff's conditions of confinement claims with prejudice for lack of exhaustion.[3]

### (2)  The September 20, 2015 Incident

Defendants next seek dismissal of Plaintiff's failure to protect claim against Defendant Kinkler for not exhausting his administrative remedies.  (D.E. 42, pp. 16-17). Defendants specifically contend that: (1) Plaintiff submitted a Step 1 grievance (Grievance No. 2016016753) complaining that Defendant Kinkler failed to protect Plaintiff from being assaulted by inmate Jackson on September 20, 2015; (2) in response to the Step 1 grievance, the reviewing officer stated that Plaintiff had been recommended by the UCC for transfer to another unit and that no further action was warranted; and (3) Plaintiff did not mention Defendant Kinkler in any subsequent Step 2 grievance.  (D.E. 42, p. 16-17).   Plaintiff contends that the reviewing officer's response to Step 1 Grievance No. 2016016753 neglected his issues involving Defendant Kinkler and that he was limited in what he could challenge in his Step 2 grievances.  (D.E. 45, p. 4).

The competent summary judgment demonstrates that Plaintiff filed one Step 2 grievance on October 12, 2015 where he only argued that the decision to transfer him violated his due process rights because he was not present at the UCC meeting.  (D.E. 42-1, p. 13).  This grievance neither mentions Defendant Kinkler nor presents any issue

---

[3] A dismissal for failure to exhaust is generally without prejudice.  However, because any new grievance filed by Plaintiff would be time-barred under the TDCJ's grievance procedure and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case.  *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

regarding Defendant Kinkler's conduct on September 20, 2015 in the chow hall. Plaintiff, therefore, has failed to exhaust both steps of the TDCJ grievance process with respect to his failure to protect claim against Defendant Kinkler. *See Woodford*, 548 U.S. at 83. Accordingly, Defendant Kinkler should be entitled to summary judgment in her favor and dismissal of Plaintiff's failure to protect claim with prejudice for lack of exhaustion.

### B. Qualified Immunity and Failure to Protect

Defendants move for summary judgment as to Plaintiff's claims on the grounds they are entitled to qualified immunity. (D.E. 42, pp. 21-22). It is unnecessary to consider whether Defendants Lopez, Chisum, and Kinkler are entitled to qualified immunity because Plaintiff's claims against them are subject to dismissal with prejudice for failure to exhaust administrative remedies. The undersigned will consider below whether Defendants Anazor and Reo are entitled to qualified immunity with regard to Plaintiff's failure to protect claims against them.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the

plaintiff must satisfy a two-prong test." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### (1) Step 1 – Constitutional Violation

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. It is well settled that the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Id.*

In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Id.* at 842-45; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Deliberate indifference describes a state of mind "more

blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. *Id*. at 837.

If a plaintiff presents evidence showing that a substantial risk of attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and the circumstances suggest that the Defendant-official being sued had been exposed to the information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the Defendant-official had actual knowledge of the risk. *Farmer*, 511 U.S. at 842-43. *Cf. Adames v. Perez*, 331 F.3d 508 (5th Cir. 2003) (holding that evidence of isolated, previous attacks was insufficient to show deliberate indifference to an inmate's safety health).

A prison officer also has a duty to intervene and attempt to end an assault on an inmate. *See Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "An official cannot stand idly by, but rather must intervene or take other reasonable action to protect a detained person from known danger." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1005 (E.D. Tex. 2006). A prison official nevertheless may avoid failure to protect liability if the facts demonstrate that he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Furthermore, the Fifth Circuit has held that unarmed officers are not required to endanger their own safety in order to protect a prison inmate threatened with physical violence. *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006).

23 / 28

Defendants Anazor and Reo contend that Plaintiff cannot show they: (1) were aware of any facts of a substantial risk of harm to Plaintiff in connection with the April 1, 2015 incident; (2) reached any conclusion or inference from the facts that Plaintiff was at substantial risk of serious harm; or (3) acted with deliberate indifference by not protecting him.  (D.E. 42, pp. 19-20).  Plaintiff responds that Defendant Anazor was advised by multiple inmates there was going to be a gang fight and that Defendant Reo was the picket officer who observed the fight and decided to ignore it.  (D.E. 45, p. 6). Plaintiff contends, therefore, that Defendants Anazor and Reo ignored their duty to protect Plaintiff from the violent assault on April 1, 2015.  (D.E. 45, pp. 7-8).

Plaintiff testified at the *Spears* hearing that Defendant Anazor was twice advised by offender Otero there was going to be a gang fight later that day on April 1, 2015, but that Officer Anazor responded by indicating he would not get involved.  Plaintiff further testified that Officer Reo as the picket officer also was aware of a possible gang fight. Plaintiff's testimony does not establish that either Officer Anazor or Reo were aware of a specific threat that inmates affiliated with gangs were planning to fight Plaintiff.  Rather, the uncontroverted evidence demonstrates that these officers had only general knowledge of a fight to take place in the prison housing area.  Defendants Anazor and Reo, therefore, were not exposed to specific information concerning a substantial risk to Plaintiff's safety that should have caused them to take preventive measures before the fight sequence began on April 1, 2015.

Nevertheless, Plaintiff's testimony at the *Spears* hearing indicates that the fight sequence, beginning with his altercation with inmate Nickerson in the shower and ending

with the assault by three inmates, was a protracted one.  Plaintiff testified specifically that: (1) Plaintiff spoke in a loud voice both to Nickerson during his altercation in the shower and later with the three offenders, who proceeded to assault him over a period of three to five minutes; (3) Officer Anazor, while apparently able to hear Plaintiff, did not respond to Plaintiff's loud voice by intervening in the altercation; (4) despite being able to observe the entire sequence of events both before and during the gang assault on Plaintiff, Officer Reo did nothing by way of intervening or otherwise protecting Plaintiff; and (5) Plaintiff suffered injuries requiring medical intervention.

Defendants Anazor and Reo had already been placed on notice of a possible fight occurring that day.  While not having any pre-knowledge of a specific threat against Plaintiff, the competent summary judgment evidence indicates that Defendants Anazor and Reo became aware of an altercation brewing between Plaintiff and other inmates and yet did nothing to intervene in the fight that, by Plaintiff's account, lasted several minutes.  Defendants Anazor and Reo have submitted no evidence, either by affidavit testimony or otherwise, to show at what point they became aware of the fight sequence or what specific actions they took by way of intervention.

Rather than act on what they were hearing or observing as Plaintiff engaged in his altercation with inmate Nickerson and then the three offenders, the competent summary evidence indicates that Defendants Anazor and Reo stood "idly by" while Plaintiff endured a protracted physical assault against him.  *See Batiste*, 421 F. Supp. 2d at 1005. Thus, when viewing the evidence in a light most favorable to Plaintiff, genuine issues of material fact exist as to whether Defendants Anazor and Reo were each placed on notice

of a substantial risk of harm to Plaintiff and yet took no remedial action to intervene in the assault. *Cf. Williams v. Lowe*, No. H-04-4701, 2006 WL 1581908, at *7 (S.D. Tex. Jun. 6, 2008) (rejecting inmate's failure to protect claim against a prison official in part because no evidence was presented "that the alleged intensity or duration of the alleged assault was so significant that [the official] should have been put on notice to take action"). Accordingly, for purposes of the qualified immunity analysis, Plaintiff has stated an Eighth Amendment claim of failure to protect against Defendants Anazor and Reo.

### (2)   Step 2 – Objective reasonableness

Pursuant to the second step of the qualified immunity analysis, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, even officers who interpret the law mistakenly but reasonably are entitled to immunity. *Id.* at 641.

In the context of an Eighth Amendment claim, whether a prison official's actions were objectively reasonable depends on whether he or she both knew of a substantial risk to an inmate and yet failed to take reasonable measures to alleviate it. *Farmer*, 511 U.S. at 847. When a defendant moves for summary judgment based on qualified immunity, it

is the plaintiff's burden to demonstrate that "all reasonable officials similarly situated would have known that the alleged acts of the defendants violated the United States Constitution." *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001).

Based on the competent summary judgment evidence presented, genuine issues of material fact exist as to whether the Defendants Anazor and Reo's actions in response to Plaintiff's assault on April 1, 2015 were objectively reasonable. Accordingly, it is respectfully recommended that Defendants Anazor and Reo are not entitled to qualified immunity and that Defendants' summary judgment motion be denied as to Plaintiff's failure to protect claim against these officers.

## VI.  RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment (D.E. 42) be GRANTED IN PART and DENIED IN PART. It is respectfully recommended that Defendants' summary judgment motion be GRANTED and Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment. It is respectfully recommended further that Defendants' summary judgment motion be GRANTED and the following claims be dismissed with prejudice for failure to exhaust administrative remedies: (1) Plaintiff's conditions of confinement claims against Defendants Lopez and Chisum in their individual capacities; and (2) Plaintiff's failure to protect claim against Defendant Kinkler in her individual capacity. Lastly, it is respectfully recommended that

Defendants' summary judgment motion be DENIED with respect to Plaintiff's failure to protect claims against Defendants Anazor and Reo in their individual capacities.

Respectfully submitted this 14th day of September, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).