IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RICHARD N TAWE, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 2:16-CV-00076 |
| § | |
| MARKESE K REO, *et al*, § | |
| § | |
| Defendants. § | |

# ORDER

The Court is in receipt of Defendants' March 17, 2017, Motion for Summary Judgment. Dkt. No. 42. The Court grants the motion.

## I.  Procedural History[1]

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ") and is currently incarcerated at the Ellis Unit in Huntsville, Texas. Plaintiff filed this civil rights action on March 7, 2016. The action was consolidated with two other civil rights cases Plaintiff filed the same day, Cause Nos. 2:16-cv-77 and 2:16-cv-83.

Plaintiff complained in Cause No. 2:16-cv-76 that, on April 1, 2015, three gang members attacked him while he was housed in F Building, 2 Section in the McConnell Unit in Beeville, Texas. He alleged that the guards in the unit that day had pre-knowledge that there would be an attack and failed to protect him. He named as Defendants the following McConnell Unit officials: (1) Officer Anazor ("Anazor"), the roving officer on duty when he was injured; and (2) Officer Reo ("Reo"), the picket officer[2] on duty when he was injured; (3) Darren S. Mayer ("Mayer"), gang intelligence officer; (4) Sergeant Stugis ("Stugis"), gang intelligence officer; and (5) Captain Joshua B. Boyer ("Boyer"). Plaintiff additionally claimed

---

[1] This Section largely follows the "Procedural History" Section included in the September 13, 2017, Memorandum and Recommendation of the Magistrate Judge to whom this case was referred. Dkt. No. 50.
[2] The "picket officer" is a prison guard generally positioned inside the unit's control room and is charged with operating the doors inside the unit. See Herrin v. Treon, 459 F. Supp. 2d 525, 531 n.2 (N.D. Tex. Oct. 10, 2006).

that the failure of the guards to protect him that day was in retaliation for a previous incident occurring on March 13, 2014.

Plaintiff complained in Cause No. 2:16-cv-77 that on September 20, 2015, a fight broke out in the 8 Building dining hall, on the B side at the McConnell Unit, and that Lieutenant Kimberly Kinkler's ("Kinkler") failure to restrain the rowdy inmate resulted in injury to Plaintiff. He named as Defendants the following McConnell Unit officials: (1) Kinkler; (2) Jerome A. Wilson ("Wilson"); (3) Assistant Warden Kenneth Putman, Jr. ("Putman"); (4) Warden Matt Barber ("Barber"); and (5) Assistant Warden Corey Furr ("Furr").

Plaintiff complained in Cause No. 2:16-cv-83 that, sometime in March 2014, Lieutenant Crystal Lopez ("Lopez") took Plaintiff to 11 Building, where he was strip searched. Plaintiff further claimed that Natasha Chisum ("N. Chisum") violated his Eighth Amendment rights by deliberately turning off the heat and forcing him to spend the night without shoes, clothing, mattress, or a blanket. Plaintiff further alleged that Lopez was the ranking officer present who heard N. Chisum state she was going to turn off the heat. In addition to Lopez and N. Chisum, Plaintiff named as Defendants Sergio Perez ("Perez"), Jonathon Chisum ("J. Chisum"), Javier Muro ("Muro"), and Justin L. Villarreal ("Villarreal").

Plaintiff did not indicate whether he seeks to sue any of the Defendants named in the consolidated action in both their individual and official capacities. He seeks monetary relief in the consolidated action.

On March 10 and May 12, 2016, the Magistrate Judge to whom this case was referred conducted *Spears*[3] hearings. On September 2, 2016, the Magistrate Judge

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The *Spears* court explained:

> For a number of years the courts have used questionnaires to assist trial judges to bring into focus the factual and legal bases of prisoners' claims. We have referred to such questionnaires as being "in the nature of a motion for more definite statement" under Fed. R. Civ. P. 12(e). The prisoners' answers to such questionnaires elaborate on the allegations contained in their complaints under Fed. R. Civ. P. 15(a), and do not constitute an independent pleading. This practice of having the prisoner state with more definiteness the form and substance of his claim occurs before service of process is required.
>
> We see no reason why a district court may not, in lieu of such questionnaires, refer the case to a magistrate to hold an evidentiary hearing "in the nature of a motion for more definite

issued a Memorandum and Recommendation ("M&R") recommending that the Court dismiss some of Plaintiff's claims. Dkt. No. 21. Also on September 2, 2016, the Magistrate Judge ordered service on Anazor, Reo, N. Chisum, Lopez, and Kinkler (collectively, "Defendants"). Dkt. No. 22. On September 16, 2016, and September 19, 2016, Plaintiff filed objections to the September 2, 2016, M&R. Dkt. Nos. 25 & 28. Then, on October 17, 2016, Defendants filed their answer to Plaintiff's complaint. Dkt. No. 32.

On March 17, 2017, Defendants filed a motion for summary judgment. Dkt. No. 42. On April 13, 2017, Plaintiff filed a response to Defendants' motion for summary judgment. Dkt. No. 45. On September 13, 2017, the Magistrate Judge issued an M&R recommending that the Court grant in part and deny in part Defendants' motion. Dkt. No. 50. On September 28, 2017, Anazor and Reo filed objections to the M&R. Dkt. No. 51. On November 13, 2017, Plaintiff filed a "Motion to Alter or Amend Summary Judgment." Dkt. No. 55. On November 20, 2017, the Magistrate Judge denied Plaintiff's motion but construed the motion as an objection to the M&R.[4] Dkt. No. 54.

The Court considers the September 2, 2016, and September 13, 2017, M&Rs, Dkt. Nos. 21 & 50, and their timely objections, Dkt Nos. 25, 28, & 51.

## II. September 2, 2016, M&R

The September 2, 2016, M&R recommends that the Court: (1) retain Plaintiff's Eighth Amendment failure to protect claims against Anazor, Reo, and Kinkler; (2) retain Plaintiff's Eighth Amendment conditions of confinement claim

---

statement." The magistrate's findings and recommendations should prove of greater aid than a prisoner's written answers on a questionnaire, in the determination whether a claim is frivolous. We are aware of neither constitutional nor statutory infirmity in such a procedure.

*Id.* at 181–82 (citations omitted).

[4] Construed as an objection, Plaintiff's November 20, 2017, motion is untimely and the Court will not consider it. The September 13, 2017, M&R states the appropriate timeframe in which to file an objection. Dkt. No. 50 at 28 ("Within fourteen (14) days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b) . . . ."). On October 17, 2017, Plaintiff returned the white card accompanying the mailed M&R. Dkt. No. 52. The white card indicates that Plaintiff received the M&R on September 21, 2017. Thus, Plaintiff's objection was filed more than fourteen days after he received the M&R.

against Lopez and N. Chisum; (3) dismiss with prejudice Plaintiff's claims against Perez, Muro, Villareal, J. Chisum, Mayer, Sturgis, and Wilson for failure to state a claim; and (4) dismiss without prejudice Plaintiff's claims against Boyer, Putnam, Barber, and Furr as withdrawn. Dkt. No. 21.

On September 16, 2016, and September 19, 2016, Plaintiff filed objections to the September 2, 2016, M&R. Dkt. Nos. 25 & 28. The Court reviews objected-to portions of a Magistrate Judge's proposed findings and recommendations de novo. 28 U.S.C. § 636(b)(1). Plaintiff's objections are frivolous, conclusory, general, or contain no arguments that the M&R has not already considered. *See id.*; *see also Battle v. United States Parole Comm'n*, 834 F.2d 419 (5th Cir. 1987) (determining that a district court need not consider frivolous, conclusive, or general objections). After independently reviewing the record and considering the applicable law, the Court **ADOPTS** the proposed M&R in its entirety. Dkt. No. 50. Thus, the Court **OVERRULES** Plaintiff's objections. Dkt. Nos. 25 & 28.

### III. September 13, 2017, M&R

In her September 13, 2017, M&R, the Magistrate Judge recommended that the Court grant in part and deny in part Defendants' motion for summary judgment. Dkt. No. 50. Specifically, the M&R recommended that the Court (1) dismiss with prejudice as barred by the Eleventh Amendment Plaintiff's claims for money damages against Defendants in their official capacities; (2) dismiss with prejudice for failure to exhaust administrative remedies: (a) Plaintiff's conditions of confinement claims against Lopez and N. Chisum in their individual capacities and (b) Plaintiff's failure to protect claim against Kinkler in her individual capacity; and (3) deny Defendants' motion with respect to Plaintiff's failure to protect claims against Anazor and Reo in their individual capacities. *Id.*

The Court adopts the M&R as to its first and second recommendations and declines to adopt the M&R as to its third recommendation. The Court considers each recommendation in turn.

#### A. Summary Judgment Standard

The M&R outlines the applicable summary judgment standard:

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be direct." Anderson, 477 U.S. at 250–51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the officials conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead he must show a genuine issue of material fact concerning the reasonableness of the officials conduct. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

Dkt. No. 50 at 13–14.

## B. Official Capacity Claims

The M&R recommends that the Court dismiss with prejudice Plaintiff's claims for money damages against Defendants in their official capacities because the Eleventh Amendment bars such claims. Dkt. No. 50 at 15; *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Plaintiff did not file a timely objection to the M&R. *See* Dkt. No. 50 at 28 (informing parties that any objections to the M&R must be filed within fourteen (14) days of their receiving the M&R). After independently reviewing the record and applicable law, the Court agrees with the M&R and **DISMISSES WITH PREJUDICE** Plaintiff's claims for money damages against Defendants in their official capacities.

## C. Exhaustion of Administrative Remedies

The M&R recommends that the Court dismiss with prejudice for failure to exhaust administrative remedies: (1) Plaintiff's conditions of confinement claims against Lopez and N. Chisum in their individual capacities and (2) Plaintiff's failure to protect claim against Kinkler in her individual capacity. Dkt. No. 50 at 16–21; *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prisoner conditions . . . until such administrative remedies as are available are exhausted."). The M&R explains:

> The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id*. The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Id*. at 515–16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative procedures does not satisfy exhaustion;

> instead, we have required prisoners to exhaust available remedies properly.").
>
> In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 517 (citations omitted). A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* Further, the nature of the complaint will influence how much detail is necessary. *Id.*

Dkt. No. 50 at 16–17.

It is uncontroverted that Plaintiff has not successfully completed the two-step TDCJ administrative process for his conditions of confinement claims against Lopez and N. Chisum. *Compare* Dkt. No. 42-1 at 7–10 *with* Dkt. No. 45. It is further uncontroverted that Plaintiff failed to exhaust the grievance process with respect to his failure to protect claim against Kinkler. *Compare* Dkt. No. 42-1 at 13 *with* Dkt. No. 45. Thus, the Court **DISMISSES WITH PREJUDICE** Plaintiff's conditions of confinement claims against Lopez and N. Chisum and failure to protect claim against Kinkler.

### D. Qualified Immunity and Failure to Protect

The M&R recommends that the Court deny Defendants' motion for summary judgment with regard to Plaintiff's failure to protect claims against Anazor and Reo. Dkt. No. 50 at 21–27. Plaintiff alleges that Anazor and Reo failed to protect him from a gang fight. Dkt. No. 1. Defendants' motion for summary judgment argues that Anazor and Reo are entitled to qualified immunity with regard to Plaintiff's claims. Dkt. No. 42 at 21–22. In response, Defendant argues that Anazor "was advised by multiple inmates that there was going to be a gang fight" and that Reo was the picket officer and was "in the picket at all time which is about the same level with were the incident happened. He observed and decided to ignore[.]" Dkt. No. 45 at 6 (mistakes in original).

The M&R explains:

> When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251–52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.* While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. [*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)] . . . ."

Dkt. No. 50 at 21–22.

Although Plaintiff offers no summary judgment evidence in response to Defendants' motion, the M&R relies on Plaintiff's May 10 and May 12, 2016, *Spears* hearing testimony as competent summary judgment evidence. Dkt. No. 50 at 24–27; *see also Grimon v. Collins*, 30 F.3d 1491 (5th Cir. 1994) (concluding that *Spears* testimony given under the penalty of perjury is competent summary judgment evidence); *Mengele v. AT&T Servs.*, No. 3:15-cv-3934-B, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) (concluding that "sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent that such pleadings comport with the requirements of current [Fed. R. Civ. P.] 56(c)"); *Garrett v. Davis*, No. 2:13-cv-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017) ("Verified pleadings and *Spears* hearing testimony given under penalty of perjury are both matters related to allegations that also serve as competent summary judgment evidence.").

The M&R considers whether Plaintiff's *Spears* hearing testimony creates a genuine issue of material fact as to whether Anazor and Reo violated Plaintiff's Eighth Amendment rights. To determine the answer to this question, the Court examines whether (1) Anazor and Reo were aware that Plaintiff was at substantial risk of being attacked and (2) whether Anazor and Reo stood "idly by" while

Plaintiff endured a protracted physical assault. Dkt. No. 50 at 24–26. Accordingly, first, the M&R finds and concludes the following:

> Plaintiff testified at the *Spears* hearing that Defendant Anazor was twice advised by Otero there was going to be a gang fight later that day on April 1, 2015, but that Officer Anazor responded by indicating he would not get involved. Plaintiff further testified that Officer Reo as the picket officer also was aware of a possible gang fight. Plaintiff's testimony does not establish that either Officer Anazor or Reo were aware of a specific threat that inmates affiliated with gangs were planning to fight Plaintiff. Rather, the uncontroverted evidence demonstrates that these officers had only general knowledge of a fight to take place in the prison housing area. Defendants Azazor and Reo, therefore, were not exposed to specific information concerning a substantial risk to Plaintiff's safety that should have caused them to take preventative measures before the fight sequence began on April 1, 2015.

Dkt. No. 50 at 24.

Second, however, the M&R finds:

> Plaintiff's testimony at the *Spears* hearing indicates that the fight sequence, beginning with his altercation with inmate Nickerson in the shower and ending with assault by three inmates, was a protracted one. Plaintiff testified specifically that: (1) Plaintiff spoke in a loud voice both to Nickerson during his altercation in the shower and later with the three offenders, who proceeded to assault him over a period of three to five minutes; (3) Officer Anazor, while apparently able to hear Plaintiff, did not respond to Plaintiff's loud voice by intervening in the altercation; (4) despite being able to observe the entire sequence of events both before and during the gang assault on Plaintiff, Officer Reo did nothing by way of intervening or otherwise protecting Plaintiff; and (5) Plaintiff suffered injuries requiring medical intervention.

Dkt. No. 50 at 24–25 (numbering mistakes in original). Thus, the M&R finds that "the competent summary evidence indicates that Defendants Anazor and Reo stood 'idly by' while Plaintiff endured a protracted physical assault against him." *Id.* at 25. For this reason, the M&R concludes that "genuine issues of material fact exist as to whether Defendants Anazor and Reo were each placed on notice of substantial risk of harm to Plaintiff and yet took no remedial action to intervene in the assault." *Id.* at 25–26.

Anazor and Reo's objection to the M&R argues that (1) the M&R "impermissibly relies on hearsay to prove the truth of the matter asserted; that

Anazor and Reo had prior knowledge of a possible gang fight from the statements of other offenders;" (2) the M&R relied on Plaintiff's personal beliefs of what Anazor and Reo heard or saw, but Plaintiff "does not actually present facts to support those beliefs;" (3) the M&R does not consider evidence demonstrating that Plaintiff never raised concerns about Anazor and Reo's alleged deliberate indifference shortly after the altercation, including that "in the Offender Protection Investigation (OPI), [Plaintiff] did not report that Anazor and Reo allegedly had knowledge the fight may occur, or that they were aware of the altercation as it was happening;" and (4) Plaintiff cannot demonstrate that Anazor and Reo's actions were objectively unreasonable "considering their lack of knowledge that [Plaintiff] would be the victim of an offender assault, and that whether they heard or saw the altercation is speculation." Dkt. No. 51.

The Court **SUSTAINS** Anazor and Reo's objections. Indeed, the Court need not consider Anazor and Reo's summary judgment evidence nor arrive at the question of objective reasonableness to determine that Plaintiff failed to meet his burden to create a genuine issue of material fact with regard to whether Anazor and Reo violated his Eighth Amendment rights. Plaintiff's March 10, 2016, *Spears* hearing transcript states in part:

> Plaintiff: So, [Anazor] comes to two section and a Mexican dude called Oturo . . . confronts the officer: "Hey, there's going to be a fight right now." . . . I was on row three and this conversation was happening on row one. . . . I could hear it. . . . And [Anazor] told him, "I know. I'm not going to do anything about it. . . ." . . . Now, [Anazor] came upstairs and started passing out mail, and then he left. . . . [T]hat's when these three members decided to block, because on three row, you know, you can – you're in front of the showers and the pickets can see. So, most of the times when there's a fight, these offenders will stand and block so the picket wouldn't see anything. . . . [When] we started, you know, the picket looked twice, the first one, when we were fighting, . . . Anazor was in three section passing out mail.
> . . .
> Magistrate Judge: Right. But . . . could Officer Anazor see your fight with Offender Nickerson?
> Plaintiff: If he is next to the door. If he is next to the door or looking through the window . . . he can see. Now, the picket can see the fight. . . . I punched Nicholson. He told me to stop. He said, "The officer's watching." So, we

> stopped. That's when Officer Felix Anazor comes out of three section and it's kind of by the picket boss, and I believe the picket boss told him what was happening. Then he goes back to passing out mail.
>
> . . .
>
> Magistrate Judge: Now, before they punched you, had you said anything else to Mr. Anazor, to Felix Anazor?
>
> Plaintiff: No.
>
> . . .
>
> Magistrate Judge: Okay. So, these offenders started hitting you, and did you see [Anazor] around anywhere? Was he in a position where he could see this?
>
> Plaintiff: No. He wasn't in a position where he could see this, but the picket could see it, the Officer Reo.
>
> . . .
>
> Magistrate Judge: And he – he was watching it.
>
> Plaintiff: He was watching.
>
> Magistrate Judge: Okay. And did you say anything to Officer Reo?
>
> Plaintiff: No, I did not, because I couldn't talk to Officer Reo . . . ."
>
> . . .
>
> Magistrate Judge: Okay. And could officer Anazor, Felix Anazor, could he hear the fight? Do you have any idea if it would have been possible to hear the fight?
>
> Plaintiff: He could have heard the altercation. . . . He could have heard everything, because when I was talking to them, I was talking in – I was using a loud voice. I was yelling at them. I called them all kinds of names. And I did that because I wanted him to know that, the Officer Anazor; I wanted him to know that this was going on.

Dkt. No. 57 at 10, 12, 14, 16, 17, 22–23, 25. Plaintiff's May 12, 2016, *Spears* hearing transcript states in part:

> Magistrate Judge: We talked about the first case, 76, against Reo and Anazor and Mayer. And my notes reflect that Anazor was the rover and Reo was the picket officer.
>
> Plaintiff: Yes.
>
> Magistrate Judge: Okay, and so Reo was watching everything on the picket officer – from the picket and Anazor was the Rover. Both of them knew that this beat up was going to happen, right . . . .
>
> Plaintiff: Yes.

Dkt. No. 56 at 42–43.

Plaintiff's testimony concerning what Anazor and Reo knew about the fight before it happened or while it was occurring does not create a genuine issue of material fact. Nor does Plaintiff's testimony concerning what Anazor and Reo heard or saw while the fight was occurring create a genuine issue of material fact. Plaintiff's *Spears* hearing statements are speculative or conclusory and do not involve Plaintiff's personal knowledge. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (concluding that a prisoner "must allege more than his personal belief that he is the victim of retaliation"). Further, Plaintiff's testimony about what he allegedly heard other offenders tell officer Anazor about the fight is impermissible hearsay. *See* FED. R. EVID. 801(c). Thus, Plaintiff does not present competent evidence that creates the genuine issue of material fact necessary to overcome Anazor and Reo's qualified immunity defense. Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's failure to protect claims against Anazor and Reo.

## IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** in its entirety the September 2, 2016, M&R, Dkt. No. 21;
- **GRANTS** Defendants' Motion for Summary Judgment, Dkt. No. 42;
- **DISMISSES WITHOUT PREJUDICE** Plaintiff's failure to protect claims against Anazor and Reo; and
- **DISMISSES WITH PREJUDICE** Plaintiff's other claims.

The Court will order entry of final judgment separately.

SIGNED this 26th day of February, 2018.

_____
Hilda Tagle
Senior United States District Judge